UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
04-CV-1181(JMR/FLN)

| | |
|---|---|
| Marvin D. Rosholt | ) |
| | ) |
| v. | )   ORDER |
| | ) |
| Blaw-Knox Construction Equipment Corporation | ) |
| | ) |
| v. | ) |
| | ) |
| Valley Paving, Inc., et al. | ) |

Plaintiff's foot was severed in an on-the-job accident. This lawsuit claims defects in a machine manufactured by defendant, Blaw-Knox Construction Equipment Corporation ("Blaw-Knox"), caused the injury. Defendant denies liability and seeks summary judgment. Defendant's motion is granted.

I. Background

The following facts are either undisputed or viewed in the light most favorable to plaintiff.

Defendant Blaw-Knox manufactures large paving machines ("pavers") used to lay and spread roadway asphalt. Plaintiff has over 20 years of experience working on paving machines. He acknowledges reading numerous safety warnings, both on the machines themselves and in manuals. He has also received training on safety procedures for these devices.

On September 20, 2002, plaintiff was repairing a PF-400A paver manufactured by Blaw-Knox. The machine had been delivered to its

owner in 1988, nearly sixteen years before.  Plaintiff had not worked with this particular paver model, nor had he read any literature specific to it.  He knew an operator's manual was available, but decided he did not have time to look for it before heading out to the job.

On September 20, plaintiff was called to work on this paver's hydraulic system.  He completed the repair, and was then asked to see if he could find out why the machine's engine would not start.  As he began to look into the problem, plaintiff warned the machine operator to stay clear of moving parts.

Plaintiff began his diagnostic test by manipulating the switches on all three of the machine's control panels.  He tested the start switch on each panel, and manipulated the forward and reverse controls, but the machine failed to start.

Plaintiff then decided to test the starter mechanism itself.  He intended to do so by using a metal object to "short" or electrically connect the starter terminals.  If the problem was total starter failure, nothing would happen; if the starter worked, however, the engine might turn over. Plaintiff understood from his work on other pavers that the "run" switches on each of the three control panels had to be turned on for the engine to start.  Accordingly, to prevent the engine from starting when he shorted the terminals, he turned one of the three switches to "off."  He acknowledges knowing of other safety procedures, but

declined to use them.

To access the starter terminals, plaintiff stood on a small platform on the side of the machine. He opened the engine compartment and located the starter mechanism. To better see the terminals, he knelt on the platform. By doing so, his knees were on the platform, with his feet hanging over the machine's hopper. Plaintiff used a knife blade to connect the terminals. When he made the connection, the starter engaged, and the engine immediately began to run.

When the paver started, the hopper mechanism also engaged and began to rise, trapping plaintiff's right foot in a pinch point, causing serious injuries and the consequent loss of his foot. The plaintiff called out four times, telling the machine operator to shut down the machine, but the operator failed to do so. A later investigation found that the third "run" switch -- the one plaintiff recalls turning off -- was in the "on" position when the accident occurred. No party offers an explanation for the discrepancy between plaintiff's recall and the fact that the switch was in the "on" position.

Plaintiff filed his complaint on March 12, 2004, seeking damages for his injuries, claiming manufacturer's failure to warn, design defect, strict liability, and breach of the implied warranties of merchantability and fitness. Plaintiff has since abandoned his failure to warn claim. (Plaintiff's Memorandum In

Opposition to Defendant's Summary Judgment Motion at 11, note 1.) This Court has subject matter jurisdiction based on diversity of citizenship.  28 U.S.C. § 1332.

II. <u>Analysis</u>

   A. <u>Summary Judgment</u>

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact.  Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 246 (1986).  The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial.  <u>See</u> <u>Anderson</u>, 477 U.S. at 248-49; <u>see also</u> <u>Hartnagel v. Norman</u>, 953 F.2d 394, 395-96 (8th Cir. 1992).  "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson</u>, 477 U.S. at 247-48.  If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted.  <u>See</u> <u>Celotex</u>, 477 U.S. at 322.

B.  <u>Products Liability</u>

Minnesota law merges negligence, design defect, and breach of warranty claims under a unified theory of strict product liability. <u>Bilotta v. Kelley Co.</u>, 346 N.W.2d 616, 623 (Minn. 1984). In order to survive summary judgment, a plaintiff must establish a genuine issue of material fact as to whether (1) the defendant's product was in a defective condition unreasonably dangerous for its intended use; (2) the defect existed when the product left defendant's control; and (3) the defect was the proximate cause of the injury. <u>Id.</u> at 623 n. 3, <u>citing</u> <u>Lee v. Crookston Coca-Cola Bottling Co.</u>, 188 N.W.2d 426, 432 (Minn. 1971).

The Court, then, begins by examining whether the Blaw-Knox paver had a design defect that rendered it unreasonably dangerous. A manufacturer must design its product to avoid unreasonable risk of harm, not only to those who use the product as intended, but also those who misuse the product in a reasonably foreseeable fashion. <u>See</u> <u>Holm v. Sponco Mfg., Inc.</u>, 324 N.W.2d 207, 212 (Minn. 1982) (citing <u>Micallef v. Miehle Co.</u>, 39 N.Y.2d 376, 385-86 (N.Y. 1976)); <u>Wagner v. International Harvester Co.</u>, 611 F.2d 224, 230 (8th Cir. 1979) (applying Minnesota law.) The Court must consider whether it was reasonably foreseeable to Blaw-Knox that someone servicing the paver might use a knife to connect the terminals, while kneeling with his feet over the hopper.

5

A party's failure to follow proper instructions and the manufacturer's directions may constitute unforeseeable misuse. See Messer v. Amway Corp., 106 Fed. Appx. 678, 683 (10th Cir. 2004) (applying Kansas law) (plaintiff did not read instructions until after her injury).  For example, a manufacturer need not anticipate that a user will ignore clear warnings and remove safety devices.  Hood v. Ryobi America Corp., 181 F.3d 608, 612 (4th Cir. 1999) (applying Maryland law); Restatement (Second) of Torts § 402A cmt. j (1965) ("Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.").  When a plaintiff "injures himself by using a product . . . in violation of clear, unmistakable, and easy-to-follow warnings, it is the [plaintiff's] own conduct that causes the injury."  Hood, 181 F.3d at 612.

Further, a warning is not insufficient simply because it fails to explain the consequences if it is disregarded.  "A clear and specific warning will normally be sufficient – the manufacturer need not warn of every mishap or source of injury that the mind can imagine flowing from the product."  Id. at 611 (internal quotation omitted).

This is especially true where, as here, the plaintiff is experienced in using the product.  "[W]hen a product is used in an

industrial setting by a skilled employee, the manufacturer is entitled to assume that a professional would heed its warnings and is not required to foresee that the professional would use the product in a manner specifically warned against." <u>Walters v. Materials Transp. Co.</u>, 1999 U.S. App. LEXIS 11384, *6 (10th Cir., June 4, 1999) (unpublished) (applying Oklahoma law to hold that a commercial meat blender was not unreasonably dangerous to its operator, who had disregarded numerous warnings).

Here, plaintiff was well familiar with pavers in general, including several models made by Blaw-Knox, but he had not worked on, trained on, or read about the PF-400A model. He acknowledges, however, that the manuals he has read for other Blaw-Knox models look similar to the operator's manual for the PF-400A. (Rosholt Dep. at 330-332.)

The paver was originally equipped with a warning label stating:

> Warning - Avoid Possible Injury or Death from a Machine Runaway
>
> (1) Do not start engine by shorting across starter terminals.  Machine will start in gear and move if normal starting circuitry is bypassed.

(Affidavit of Frank Martinelli, ¶¶ 2-6 and Ex. A at BK 00372.)

The label on the machine appears to have been removed prior to the accident, and plaintiff initially testified that he did not recall ever having seen it. (Rosholt Dep. at 185-88.) However,

7

the text of the label appears in at least two Blaw-Knox manuals that plaintiff read and kept in his office. (Rosholt Dep. at 330-32; Affidavit of Kelly W. Hoversten, Exs. 8 and 9.)

Plaintiff admits he previously read the Blaw-Knox Operator's Manual's warnings to:

> Be certain that the hand brake is set and the transmission shift lever, direction-speed control lever and all switches are in the "OFF" or neutral positions before starting the engine.
>
> Make sure everyone is clear of the paver before starting so they cannot be struck or caught in moving parts.
>
> Always be sure that all control switches are in the "OFF" or neutral position, hand brake is applied, hopper wings are lowered, screed is lowered or secured in a raised position and the engine is shut off before leaving operator's seat.

(Hoversten Aff., Ex. 5 at BK 00003, 00005; Rosholt Dep. at 208-209.)

Plaintiff was also familiar with several warnings specific to servicing the paver, including:

> The [engine] clutch should be disengaged . . . when servicing the machine as a safety precaution.
>
> Before attempting to service . . . make certain that:
>
>   (1) All controls and switches are in the "OFF" or "NEUTRAL" position.
>   (2) Hand brake is applied.
>   (3) Hopper wings are lowered.
>   (4) Screed is lowered or secured in the raised position.
>   (5) Engine is shut off unless otherwise instructed.

(Hoversten Aff. Ex. 5 at BK 00042, 00058; Rosholt Dep. at 219, 221-222.)

8

Plaintiff was a trained and experienced mechanic who understood the significance of these warnings. He could easily have followed them. He could have turned off all the switches himself, or could have asked the paver operator to do so. (Rosholt Dep. at 131, 140, 144-47, 149.) He could have made sure his body was clear of all moving parts before testing the starter. (Id. at 169.) He could have disengaged the engine clutch before starting his repairs. (Id. at 330-32.) Had he followed even a single one of these known safety procedures, or many other precautions recommended in the manuals,[1] this accident would not have occurred.

The Court concludes that Blaw-Knox's warnings satisfied its duty to design a reasonably safe product. Blaw-Knox had no duty to anticipate that a trained mechanic with 20 years of experience would disregard numerous warnings he knew were directed to his safety. There is no design defect rendering the paver unreasonably dangerous. Absent a design defect, plaintiff's product liability claim fails as a matter of law.

Having made this determination, the Court need not address questions of primary assumption of risk. As a result, the Court

---

[1] Blaw-Knox Construction Equipment's Memorandum in Support of Motion for Summary Judgment ("Defendant's Memorandum") cites no fewer than ten additional safety precautions, all of which were known to plaintiff. (Def. Mem. at 18.) Plaintiff's response memorandum does not deny these precautionary warnings were given. The problem was not a failure to warn; rather, it was that the warnings were not heeded.

9

need not consider the vexing question of whether plaintiff's recall is in error when he refers to switching one of the run switches to "off," where the subsequent investigation established that it was, in fact, in the "on" position. Certainly, were the Court to conclude that plaintiff did turn the switch to "off," it could not find he "voluntarily chose to chance the risk." See Gearin v. Wal-Mart Stores, Inc., 53 F.3d 216, 217 (8th Cir. 1995) (affirming denial of summary judgment under Minnesota law where plaintiff saw and attempted to avoid a patch of ice, but stepped on it unintentionally).

    C.  Breach of Warranty

The parties acknowledge that Minnesota's 4-year statute of limitations applies to plaintiff's breach of warranty claim. See Minn. Stat. § 336.2-725. They disagree, however, as to when the claim accrued. The statute provides that:

> A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods[,] and discovery of the breach must await the time of such performance[,] the cause of action accrues when the breach is or should have been discovered.

Minn. Stat. § 336.2-725(2) (2002). If the claimed breach could reasonably have been discovered on delivery, the statute bars plaintiff's claim, as the paver was delivered in March, 1988, some 16 years before plaintiff's complaint was filed.

The Court finds the statute's "discovery" exception cannot be invoked on these facts. The complaint alleges only breaches of

implied warranties of merchantability and fitness; it does not allege explicit warranties as to future performance. (Compl. ¶¶ 15-20.) An implied warranty by its very nature cannot "explicitly extend to future performance." Nelson v. International Harvester Corp., 394 N.W.2d 578, 582 (Minn. Ct. App. 1986), overruled on other grounds by Lloyd F. Smith Co. v. Den-Tal-Ez, Inc., 491 N.W.2d 11, 17 (Minn. 1992). Therefore, the Court finds any breach of warranty claim accrued upon tender of delivery in 1988, and is barred by the statute of limitations.

Plaintiff asks the Court to apply a different rule in personal injury cases, citing Klempka v. G. D. Searle & Co., 963 F.2d 168, 170 (8th Cir. 1992). His reliance on Klempka is misplaced. Klempka involved a claim for personal injuries based on the theory of product liability, not breach of warranty. Id. Plaintiff's product liability claims are timely, and have been considered by the Court. But a product liability claim is not the same as one for breach of implied warranty. See Piotrowski v. Southworth Prods. Corp., 15 F.3d 748, 751 (8th Cir. 1994) (Minnesota Supreme Court has not merged the theory of implied warranty of fitness into theories of strict liability and negligence).

The nature of the legal theory governs the limitations period. See Mader v. American Motors Corp., 611 F. Supp. 877, 881 (D. Minn. 1985) (Alsop, J.) (holding Minn. Stat. § 336.2-725

11

applicable to personal injury action based on breach of warranty). Thus, breach of warranty claims involving personal injury accrue upon tender of delivery. See id. at 880-81.

Accordingly, plaintiff's breach of warranty claims are barred.

III. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 28, 2006

                                      s/ James M. Rosenbaum
                                      JAMES M. ROSENBAUM
                                      United States Chief District Judge